David G. Jankowski (SBN 205,634)
david.jankowski@knobbe.com
Marko R. Zoretic (SBN 233,952)
marko.zoretic@knobbe.com
Daniel Kiang (SBN 307,961)
daniel.kiang@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
Telephone:  949-760-0404
Facsimile:  949-760-9502

Attorneys for Plaintiff,
BLACKHAWK MANUFACTURING GROUP INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BLACKHAWK MANUFACTURING GROUP INC. d/b/a 80 PERCENT ARMS, a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> TACTICAL GEAR HEADS LLC d/b/a 80% LOWERS, an Indiana limited liability company, CHAD MYERS, an individual, JACQUELYN MYERS, an individual, and WILLIAM MCALLISTER, an individual, <br><br> Defendants. | Case No. 8:19-cv-01173 <br><br> **COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, TRADEMARK DILUTION, COMMON LAW TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff BLACKHAWK MANUFACTURING GROUP INC. d/b/a 80% ARMS ("Plaintiff" or "BLACKHAWK"), hereby complains of Defendants TACTICAL GEAR HEADS LLC d/b/a 80% LOWERS ("TACTICAL GEAR HEADS"), CHAD MYERS ("Mr. Myers"), JACQUELYN MYERS ("Ms. Myers"), and WILLIAM MCALLISTER a/k/a Billy McAllister ("Mr. McAllister") (collectively, "Defendants"), and alleges as follows:

## I.    THE PARTIES

1.    Plaintiff BLACKHAWK is a corporation organized and existing under the law of the State of California, having its principal place of business at 12272 Monarch Street, Garden Grove, CA 92841.

2.    BLACKHAWK is informed and believes, and on that basis alleges, that Defendant TACTICAL GEAR HEADS is a limited liability company organized and existing under the law of the State of Indiana, having its principal place of business at 5719 Lawton Loop E Dr., Suite 112, Indianapolis, Indiana, 46037.

3.    BLACKHAWK is informed and believes, and on that basis alleges, that Defendant Chad Myers is an individual residing in Fishers, Indiana 46037, and conducts business as "80% LOWERS" with a principal place of business at 5719 Lawton Loop E Dr., Suite 112, Indianapolis, Indiana, 46037.

4.    BLACKHAWK is informed and believes, and on that basis alleges, that Defendant Jacquelyn Myers is an individual residing in Fishers, Indiana 46037, and conducts business as "80% LOWERS" with a principal place of business at 5719 Lawton Loop E Dr., Suite 112, Indianapolis, Indiana, 46037.

5.    BLACKHAWK is informed and believes, and on that basis alleges, that Defendant William McAllister is an individual residing in Indianapolis, Indiana 46220, and conducts business as "80% LOWERS" with a principal place of business at 5719 Lawton Loop E Dr., Suite 112, Indianapolis, Indiana, 46037.

## II.   <u>JURISDICTION AND VENUE</u>

6.     This Court has original subject matter jurisdiction over the claims relating to trademark infringement; false designation of origin; federal unfair competition; and trade dress infringement pursuant to sections 34(a) and 39(a) of the Lanham Act and 15 U.S.C. §§ 1116(a) and/or 1121(a).   The Court has original subject matter jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States.   The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. §§ 1339(b) and 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7.     This Court has personal jurisdiction over Defendant TACTICAL GEAR HEADS because it has committed acts of trademark infringement, false designation of origin, trademark dilution, and unfair competition in this Judicial District, including but not limited to, by using infringing marks in connection with the advertisement, marketing, promotion, sale, and offering for sale of goods to customers in this Judicial District.   The acts of TACTICAL GEAR HEADS form a substantial part of the transactions, events or omissions giving rise to BLACKHAWK's claims.

8.     This Court has personal jurisdiction over Defendant Chad Myers because he, as owner and officer of Defendant TACTICAL GEAR HEADS, directed and/or controlled the acts of infringement complained of herein.   Mr. Myers' direction and control over the acts complained of herein constitute trademark infringement, false designation of origin, trademark dilution, and unfair competition that form a substantial part of the transactions, occurrences, events or omissions giving rise to BLACKHAWK's claims.   Mr. Myers travels regularly for business and leisure, including to California.

9.     Defendant Jacquelyn Myers is subject to the personal jurisdiction of this Court because she, as owner and officer of Defendant TACTICAL GEAR HEADS, directed and/or controlled the acts of infringement complained of herein.  Ms. Myers' direction and control over the acts complained of herein constitute trademark infringement, false designation of origin, trademark dilution, and unfair competition that form a substantial part of the transactions, occurrences, events or omissions giving rise to BLACKHAWK's claims.  Ms. Myers travels regularly for business and leisure, including to California.

10.     Defendant William McAllister is subject to the personal jurisdiction of this Court because he, as owner and officer of Defendant TACTICAL GEAR HEADS, directed and/or controlled the acts of infringement complained of herein.  Mr. McAllister's direction and control over the acts complained of herein constitute trademark infringement, false designation of origin, trademark dilution, and unfair competition that form a substantial part of the transactions, occurrences, events or omissions giving rise to BLACKHAWK's claims.  Mr. McAllister travels regularly for business and leisure, including to California.

11.     In addition, upon information and belief, each of the Defendants targeted and directed their acts of infringement, false designation of origin, trademark dilution, and unfair competition complained of herein towards this Judicial District.  Upon information and belief, each of the Defendants knew and intended that their actions complained of herein would cause injury to BLACKHAWK, and that such injury would be felt greatest in California and in this Judicial District, where Defendants knew BLACKHAWK has its principal place of business.

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c).

### III.   ALLEGATIONS COMMON TO ALL CLAIMS OF RELIEF

13.    From 2013 to the present, BLACKHAWK (previously named 80 PERCENT ARMS INC.) has been designing, developing, and selling innovative products in this Judicial District and across the United States, in the area of firearm components and manufacturing of firearms.  These products include unfinished firearm components, kits, jigs, and accessories relating to same, to allow for the manufacture of completed firearms.

14.    BLACKHAWK has expended substantial resources into promoting and marketing its products across the entirety of the United States, and those efforts have made it the market leader for its products throughout the United States.

15.    From 2013 to the present, BLACKHAWK has been consistently and continuously offering products for sale using the synonymous business names 80% ARMS and (spelled out) 80 PERCENT ARMS.

16.    BLACKHAWK's products include the following:

- A family of jigs designed to facilitate the completion of firearms, known as the "EASY JIG" family (and, after development of the second generation family referenced below, also known as the "EASY JIG GEN 1" family).  The family includes jigs for the AR-9 rifle, for the AR-15 rifle, and for the .308 rifle.

- A family of jigs specially designed to facilitate the completion of firearms, known as the "EASY JIG GEN 2" family.  The family includes jigs for the AR-9 rifle, for the AR-15 rifle, and for the .308 rifle.

17.    Since 2013, BLACKHAWK has been marketing its products using a distinctive logo, shown below, that includes "80%", "ARMS", and a rightward-facing rifle, all having a weathered appearance with splatter marks.



18.    BLACKHAWK markets and sells its 80% ARMS-branded products, including the two EASY JIG® product families, on a website at the URL: https://www.80percentarms.com/.    BLACKHAWK products are also marketed and sold via firearm and gunsmith vendors, including Brownells, Midway USA, and the Defendants.

19.    Customers that purchase products associated with 80% ARMS brand, including the two EASY JIG® product families, have come to expect a high level of quality in its products.

20.    In order to protect BLACKHAWK's investment in the development of its products, it has registered and owns a U.S. Trademark Registration in the mark EASY JIG®.  Specifically, that mark is protected by Registration No. 4,785,446, which was filed on December 10, 2014, and which registered on August 4, 2015.  Attached hereto as **Exhibit 1** is a true and correct copy of BLACKHAWK's trademark registration, which is incorporated herein by reference.

21.    By virtue of BLACKHAWK's extensive, continuous, and ongoing marketing efforts directed at firearm components, firearm manufacturing, and jigs, kits, and accessories for same, BLACKHAWK owns common law trademark rights extending across the United States, including to the marks:

- 80% ARMS;
- 80 PERCENT ARMS; and

- The distinctive 80% ARMS logo:



22.    The common law marks identified above are collectively referred to herein as the "80% ARMS Marks."

23.    The EASY JIG® mark and the 80% ARMS Marks have not been abandoned, canceled, or revoked.  Each of the EASY JIG® mark and the 80% ARMS Marks constitutes an enforceable trademark that uniquely identifies jigs and other unfinished firearm products that emanate from, are sponsored by, and/or are authorized by BLACKHAWK.

24.    As a result of the widespread use and display of each of the EASY JIG® mark and the 80% ARMS Marks as a distinctive trademark identifying jigs and other unfinished firearm products, (a) the public has come to recognize and identify products bearing any of the EASY JIG® and 80% ARMS Marks as emanating from a common source, namely BLACKHAWK, (b) the public recognizes that products bearing any of the EASY JIG® mark and the 80% ARMS Marks constitute high quality products that conform to the specifications created by BLACKHAWK, and (c) each of the EASY JIG® mark and the 80% ARMS Marks has established strong secondary meaning and extensive goodwill.

25.    Beginning in 2013, when BLACKHAWK launched its first products, and in the years since, BLACKHAWK has extensively developed, promoted, advertised, and marketed its families of products and its associated trademarks.

26.    BLACKHAWK is informed and believes, and on that basis alleges, that Mr. Myers, Ms. Myers, and Mr. McAllister each possesses an ownership interest in Defendant TACTICAL GEAR HEADS.

27.    BLACKHAWK is informed and believes, and on that basis alleges, that each of Mr. Myers, Ms. Myers, and Mr. McAllister, through their conduct acting individually and collectively, have the authority to direct and control, and in fact do direct and control, the advertising, marketing, and promoting of products through the entity TACTICAL GEAR HEADS.

28.    BLACKHAWK is informed and believes, and on that basis alleges, that Mr. Myers, Ms. Myers, and Mr. McAllister each share responsibility for directing the business activities of TACTICAL GEAR HEADS, including sharing responsibility in business activities directed at products that TACTICAL GEAR HEADS offers for sale in direct competition to BLACKHAWK's products protected by the EASY JIG® and 80% ARMS Marks.

29.    BLACKHAWK is informed and believes, and on that basis alleges, that Mr. Myers, Ms. Myers, and Mr. McAllister are each the moving force behind the activities of Defendant TACTICAL GEAR HEADS.  For the reasons herein, Mr. Myers, Ms. Myers, and Mr. McAllister are each directly and/or secondarily liable for the activities of Defendant TACTICAL GEAR HEADS.

30.    BLACKHAWK is informed and believes, and on that basis alleges, that there is such a unity of interest and ownership between TACTICAL GEAR HEADS and the individuals Mr. Myers, Ms. Myers, and Mr. McAllister, such that their separate personalities do not exist, and that failure to disregard their separate existence would result in fraud or injustice.

31.    Defendants offer for sale, and sell, in this Judicial District and across the United States, products in the area of firearm components and manufacturing of firearms, including unfinished firearm components, kits, jigs, and accessories relating to same, that allow for the manufacture of completed

firearms.   Defendants offer these products for sale in direct competition with BLACKHAWK.

32.   As part of their collective business efforts, for several years Defendants have been purchasing products from BLACKHAWK, including products protected by the EASY JIG® mark and the 80% ARMS Marks.

33.   Each of the Defendants has witnessed the tremendous success of BLACKHAWK and its products protected by the EASY JIG® mark and the 80% ARMS Marks across the entirety of the United States.

34.   BLACKHAWK is informed and believes, and on that basis alleges, that Defendants responded to the success of BLACKHAWK that they observed by engaging in a deliberate and intentional business plan designed to create the impression in the minds of consumers that Defendants share an identity, affiliation, or sponsorship with BLACKHAWK.

35.   Defendants' plan included adopting a business name that is confusingly similar to BLACKHAWK's business name.   BLACKHAWK conducts business and sells its products protected by the EASY JIG® and 80% ARMS Marks under the business name "80% ARMS."   Defendants sell its competing products under the business name "80% LOWERS."   Defendants sometimes refer to themselves using other similar sounding business names, including "80-LOWERS" and "80-LOWER."   All of Defendants' chosen fictitious business names incorporate "80%" or "80," leading to confusion with BLACKHAWK's distinctive and well-known business name "80% ARMS."

36.   Defendants' plan further included adopting a logo that is confusingly similar to BLACKHAWK's distinctive and well-known logo.   The logos are shown below, side-by-side.




**BLACKHAWK Logo**                    **Defendants Logo**

37.    Both logos have a prominent "80%" with a similar font.    Both logos include a silhouette of a similar distinctive right-pointing rifle.    Both logos have the same weathered look with splatter marks.

38.    Below is another version of Defendants' logo that appears on their marketing materials.    This version includes the same features, and the same weathered/splattered appearance, but is in color.



39.    Below is another version of Defendants' logo that appears on their marketing materials.    This version maintains the weathered/splattered look, but with a greater focus on the "80%" and the right-pointing rifle, more closely mimicking the features from BLACKHAWK's distinctive and well-known logo.



40.    Below is another version of Defendants' logo that appears on their marketing materials.  This version maintains the weathered/splattered look, but with even more focus on the "80" and the right-pointing rifle, even more closely mimicking the same features from BLACKHAWK's distinctive and well-known logo.



41.    As shown below, Defendants use a logo on their purchase orders that does not look like the logos on their marketing materials, and that does not look like BLACKHAWK's distinctive and well-known logo.

42.    The shopping habits of consumers has evolved over time such that consumers spend more time browsing and purchasing products using mobile phones.  This trend applies to the products protected by the EASY JIG® and 80% ARMS Marks.  The respective logos of BLACKHAWK and Defendants are shown below with the appearance they have on a mobile phone.

  

43.     As shown above, the mobile phone version of Defendants' logo maintains the prominent "80%" with the similar font to BLACKHAWK's logo. Both logos include the silhouette of the similar looking right-pointing rifle. Both logos maintain the same weathered look with splatter marks.

44.     Defendants' plan further included incorporating into their marketing materials presentations of BLACKHAWK's products that are protected by the EASY JIG® mark without including any "80% ARMS" branding (name or logo), and instead including Defendants' branding.   An example from Defendants' marketing materials is shown below.

# 80% Lower Jig



Easy Jig Gen 2 Multi Platform with
Tooling (AR-9 / AR-15 / LR-308)

~~$369.99~~ $299.99



58 reviews

45.     The example below shows an excerpt from a screenshot of a marketing video created by Defendants.  This screenshot shows that Defendants affixed their logo into the upper left corner of a video showing how to use one of BLACKHAWK's EASY JIG® products.



46.   The example below shows an excerpt from Defendants' marketing materials displaying one of BLACKHAWK's EASY JIG® products.   Again, there is no reference to the 80% ARMS branding (name or logo).  Instead, in the text adjacent to the product, Defendants refer to it as "**one of our jigs**."



47.   As another example, Defendants' marketing materials direct consumers to what they refer to as "**an 80 Percent Arms Easy Jig video tutorial**."   The associated video tutorial was not created by, sponsored by, or

authorized by BLACKHAWK.  It is a tutorial that was created by Defendants, and, as shown below, it prominently shows Defendants' branding.



48.    As another example, Defendants' marketing materials provide consumers with the ability to access a copy of an Instruction Manual for BLACKHAWK's EASY JIG® product.    As shown below, Defendants' presentation omits 80% ARMS branding (name or logo), and instead present a large and very prominent version of Defendants' logo.

Download your own copy of the AR 15 Easy Jig Pictorial Instructions by tapping the image



49.    In the example above, Defendants presented BLACKHAWK's EASY JIG® mark in red, with the same distinctive weathered/splattered appearance as the words in Defendants' logo, further blurring any distinction between BLACKHAWK and Defendants in the minds of consumers.

50.    Defendants' plan further included copying the marketing strategies of BLACKHAWK.  In 2018, BLACKHAWK began a marketing campaign offering a "Freedom Combo Kit."  A few months later, Defendants began a marketing campaign with a similar kit that they called "The Freedom Combo." Examples of the presentations of the two campaigns are shown below.




**BLACKHAWK's campaign**            **Defendants' campaign**

51.   In 2018, BLACKHAWK began a campaign offering a "Patriot Combo Kit."  In 2019, Defendants began a campaign they called a "Patriot Pack."  Examples of the presentations of the two campaigns are shown below.




**BLACKHAWK's campaign**            **Defendants' campaign**

52.   Defendants have also created marketing materials that portray BLACKHAWK's products offered for sale and sold under the 80% ARMS Marks, where the products actually being offered for sale and sold by Defendants were not in fact the products portrayed, but were instead products originating from another source, not BLACKHAWK, that provides inferior, lower quality products that competes with the portrayed BLACKHAWK products.

53.   BLACKHAWK is informed and believes, and on that basis alleges, that each of the Defendants has directed the advertising, marketing, and promotion of their unfinished firearm products in a manner that mistakenly conveys to relevant consumers that a shared identity, affiliation, or sponsorship exists between BLACKHAWK and the Defendants.

54.   BLACKHAWK is informed and believes, and on that basis alleges, that each of the Defendants has directed the advertising, marketing, and promotion of their unfinished firearm products in a manner that confuses relevant consumers into thinking that products that the consumers purchased from the Defendants had been purchased from BLACKHAWK.

55.   As a result of Defendants' actions as discussed herein, consumers have been actually confused into falsely believing that that there is a shared identity, sponsorship, or affiliation as between BLACKHAWK and the Defendants.

56.   BLACKHAWK regularly receives telephone calls and email messages from customers of Defendants who mistakenly believe that they purchased products from BLACKHAWK.

# IV.    FIRST CLAIM FOR RELIEF

(Federal Trademark Infringement)
(15 U.S.C. § 1114)
(Against All Defendants)

57.    BLACKHAWK repeats and re-alleges the allegations of paragraphs 1–56 of this Complaint as if set forth fully herein.

58.    This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

59.    Upon information and belief, Defendants are involved in the marketing, promotion, sale, offer for sale, and distribution of unfinished firearm components, and jigs and other accessories relating to same, in connection with the EASY JIG® mark, without BLACKHAWK's consent.

60.    Upon information and belief, after BLACKHAWK's adoption, use, and federal registration of the EASY JIG® mark, Defendants have used in commerce reproductions, copies, or colorable imitations of the EASY JIG® mark without BLACKHAWK's consent in a manner that infringes upon BLACKHAWK's rights in the EASY JIG® mark in violation of 15 U.S.C. § 1114.

61.    Without BLACKHAWK's consent, Defendants have used in commerce marks that are identical or confusingly similar to the EASY JIG® mark in connection with the sale, offering for sale, distribution, or advertising of goods in a manner that is likely to cause confusion, or to cause mistake, or to deceive consumers.

62.    BLACKHAWK is informed and believes, and thereon alleges, that Defendants did so with actual knowledge of BLACKHAWK's ownership and prior use of the EASY JIG® mark, and with the intent to unfairly compete with BLACKHAWK, to trade upon BLACKHAWK's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive

the public into believing that Defendants' products are associated with, sponsored by, originate from, or are approved by BLACKHAWK, when they are not.

63. BLACKHAWK is informed and believes, and thereon alleges, that Defendants' activities constitute willful and intentional infringement of the EASY JIG® mark, directly and/or indirectly, in disregard of BLACKHAWK's proprietary rights, and were done despite Defendants' knowledge that the use of the EASY JIG® mark was and is in direct contravention of BLACKHAWK's rights.

64. BLACKHAWK is informed and believes, and thereon alleges, that Defendants have derived and received, and will continue to derive and receive, gains, profits, and advantages from the use of the EASY JIG® mark in an amount that is not presently known to BLACKHAWK. By reason of Defendants' actions, constituting unauthorized use of the EASY JIG® mark, BLACKHAWK has been damaged and is entitled to monetary relief in an amount to be determined at trial.

65. Due to Defendants' actions, constituting unauthorized use of the EASY JIG® mark, BLACKHAWK has suffered and continues to suffer great and irreparable injury, for which BLACKHAWK has no adequate remedy at law.

## V.   SECOND CLAIM FOR RELIEF

(Federal Unfair Competition & False Designation of Origin)
(15 U.S.C. § 1125(a))
(Against All Defendants)

66. BLACKHAWK repeats and re-alleges the allegations of paragraphs 1–65 of this Complaint as if set forth fully herein.

67. This is a claim for unfair competition and false designation of origin arising under 15 U.S.C. § 1125(a).

-18-

68.    Defendants' use of the EASY JIG® mark and the 80% ARMS Marks without BLACKHAWK's consent constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods or commercial activities by another person in violation of 15 U.S.C. § 1125(a).

69.    Defendants' use of the EASY JIG® mark and the 80% ARMS Marks without BLACKHAWK's consent constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods or commercial activities in violation of 15 U.S.C. § 1125(a).

70.    Such conduct by Defendants is likely to confuse, mislead, and deceive Defendants' customers, purchasers, and members of the public as to the origin of Defendants' products or cause said persons to believe that Defendants and/or their products have been sponsored, approved, authorized, or licensed by BLACKHAWK or are in some way affiliated or connected with BLACKHAWK, when they are not, all in violation of 15 U.S.C. § 1125(a).

71.    Upon information and belief, Defendants' actions were undertaken willfully with full knowledge of the falsity of such designation of origin and false descriptions or representations.

72.    BLACKHAWK is informed and believes, and thereon alleges, that Defendants have derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendants' false designation of origin, false or misleading statements, descriptions of fact, or false or misleading representations of fact in an amount that is not presently known to

-19-

BLACKHAWK.    By reason of Defendants' actions, constituting false designation of origin, false or misleading statements, false or misleading descriptions of fact, or false or misleading representations of fact, BLACKHAWK has been damaged and is entitled to monetary relief in an amount to be determined at trial.

73.    Due to Defendants' actions, constituting false designation of origin, false or misleading statements, false or misleading description of fact, or false or misleading representations of fact, BLACKHAWK has suffered and continues to suffer great and irreparable injury, for which BLACKHAWK has no adequate remedy at law.

## VI.    THIRD CLAIM FOR RELIEF

(Federal Trademark Dilution)
(15 U.S.C. § 1125(c))
(Against All Defendants)

74.    BLACKHAWK repeats and re-alleges the allegations of paragraphs 1–73 of this Complaint as if set forth fully herein.

75.    This is a claim for trademark dilution under 15 U.S.C. § 1125(c).

76.    The products sold by BLACKHAWK under the EASY JIG® mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world.

77.    Products sold under the EASY JIG® mark, by reason of their style and design and quality of workmanship, have come to be known to the purchasing public throughout the United States as representing products of high quality, which are sold under good merchandising and customer service conditions.    As a result, the EASY JIG® mark, and the goodwill associated therewith, are of great value to BLACKHAWK.

78.    By virtue of the wide renown acquired by the EASY JIG® mark, coupled with the national distribution and extensive sale of various products distributed under this trademark, the EASY JIG® mark has become famous.

79.    Upon information and belief, Defendants' actions were done willfully with intent to exploit BLACKHAWK's reputation and dilute the EASY JIG® mark.

80.    By reason of the aforesaid acts constituting trademark dilution, BLACKHAWK has been damaged and is entitled to monetary relief in an amount to be determined at trial.

81.    Due to Defendants' actions, constituting trademark dilution, BLACKHAWK has suffered and continues to suffer great and irreparable injury, for which BLACKHAWK has no adequate remedy at law.

## VII.    <u>FOURTH CLAIM FOR RELIEF</u>

### (California Common Law Trademark Infringement)
### (Against All Defendants)

82.    BLACKHAWK repeats and re-alleges the allegations of paragraphs 1–81 of this Complaint as if set forth fully herein.

83.    This is a claim for trademark infringement, arising under California common law.

84.    Defendants' acts complained of herein constitute trademark infringement under California common law.  BLACKHAWK is informed and believes, and thereon alleges, that Defendants' acts complained of herein are willful and deliberate and committed with knowledge that Defendants' unauthorized use of BLACKHAWK's common law trademarks, including the 80% ARMS Marks, causes a likelihood of confusion.

85.    BLACKHAWK is informed and believes, and thereon alleges, that Defendants have derived and received and will continue to derive and receive, gains, profits and advantages from Defendants' trademark infringement in an

-21-

amount that is not presently known to BLACKHAWK.    By reason of Defendants' wrongful acts as alleged in this Complaint, BLACKHAWK has been damaged and is entitled to monetary relief in an amount to be determined at trial.

86.    Due to Defendants' trademark infringement, BLACKHAWK has suffered and continues to suffer great and irreparable injury for which BLACKHAWK has no adequate remedy at law.

87.    Defendants' willful acts of trademark infringement under California common law constitute fraud, oppression, and malice.  Accordingly, BLACKHAWK is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

### VIII.    <u>FIFTH CLAIM FOR RELIEF</u>

(California Unfair Competition)
(Against All Defendants)

88.    BLACKHAWK repeats and re-alleges the allegations of paragraphs 1–87 of this Complaint as if set forth fully herein.

89.    This is a claim for unfair competition, arising under California Business & Professions Code § 17200, *et seq.* and California common law.

90.    Defendants' acts of trademark infringement, false designation of origin, and trademark dilution complained of herein constitute unfair competition with BLACKHAWK under the common law and statutory laws of the State of California, particularly California Business & Professions Code § 17200 et seq.

91.    BLACKHAWK is informed and believes, and thereon alleges, that Defendants have derived and received, and will continue to derive and receive, gains, profits and advantages from Defendants' unfair competition in an amount that is not presently known to BLACKHAWK.    By reason of Defendants'

wrongful acts as alleged in this Complaint, BLACKHAWK has been damaged and is entitled to monetary relief in an amount to be determined at trial.

92.    By their actions, Defendants have injured and violated the rights of BLACKHAWK and have irreparably injured BLACKHAWK, and such irreparable injury will continue unless Defendants are enjoined by this Court.

93.    Defendants' willful acts of unfair competition under California common law constitute fraud, oppression and malice.    Accordingly, BLACKHAWK is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

## IX.    PRAYER FOR RELIEF

**WHEREFORE**, BLACKHAWK prays for judgment in its favor against Defendants for the following relief:

A.    A preliminary and permanent injunction against Defendants, their officers, agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participation with Defendants, enjoining them from engaging in the following activities and from assisting or inducing, directly or indirectly, others to engage in the following activities:

1. using any of the EASY JIG® mark or the 80% ARMS Marks, or any other mark, symbol, or logo that is confusingly similar to the EASY JIG® mark or the 80% ARMS Marks on or in connection with any goods, including but not limited to, unfinished firearm components, and jigs and other accessories relating to same;

2. falsely designating the origin of Defendants' goods;

3. unfairly competing with BLACKHAWK in any manner whatsoever;

4.  making false or misleading statements, descriptions of fact, or false or misleading representations of fact;

5.  causing a likelihood of confusion or injuries to BLACKHAWK's business reputation; and

6.  manufacturing, using, displaying, distributing, or selling any goods that infringe the EASY JIG® mark or any of the 80% ARMS Marks;

B.  That Defendants be required to account for any and all profits derived by their acts of trademark infringement, false designation of origin, trademark dilution, and unfair competition complained of in this Complaint.

C.  That Defendants' acts of trademark infringement, false designation of origin, trademark dilution, and unfair competition complained of in this Complaint be deemed willful, that this be deemed an exceptional case, and that BLACKHAWK be entitled to enhanced damages.

D.  That BLACKHAWK be awarded damages for Defendants' trademark infringement pursuant to 15 U.S.C. § 1117 in the form of either: Defendants' profits, damages sustained by BLACKHAWK, and the costs of the action.

E.  That the amount of the profits or damages be increased three times, pursuant to 15 U.S.C. § 1117(b), to properly compensate BLACKHAWK for Defendants' actions.

F.  That BLACKHAWK be awarded its reasonable costs, expenses, and attorneys' fees pursuant to at least 15 U.S.C. § 1117.

G.  That Defendants be required to deliver and destroy within thirty (30) days all devices, literature, advertising, packaging, goods, and other materials bearing the infringing trademarks pursuant to 15 U.S.C. § 1118.

H.    That BLACKHAWK be awarded damages for Defendants' common law trademark infringement and for unfair competition pursuant to California Business & Professions Code § 17200 *et seq.*

I.    That Defendants' acts of unfair competition complained of in this Complaint be deemed willful; that this be deemed an exceptional case; and that BLACKHAWK be entitled to enhanced damages.

J.    That BLACKHAWK be awarded exemplary damages from Defendants pursuant to Cal. Civ. Code. § 3294.

K.    An award of pre-judgment and post-judgment interest and costs of this action against Defendants.

L.    Such other and further relief as this Court may deem just.


                                    KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:                    By:  /s/ *David G. Jankowski*
                              David G. Jankowski
                              Marko R. Zoretic
                              Daniel Kiang

                              Attorneys for Plaintiff,
                              BLACKHAWK MANUFACTURING
                              GROUP INC.

1    **<u>DEMAND FOR TRIAL BY JURY</u>**

2         Plaintiff BLACKHAWK MANUFACTURING GROUP INC. hereby

3    demands a trial by jury on all issues so triable.

4

5                                   KNOBBE, MARTENS, OLSON & BEAR, LLP

6

7    Dated:                    By:  /s/ *David G. Jankowski*

8                                   David G. Jankowski
                                    Marko R. Zoretic
9                                   Daniel Kiang

10                                  Attorneys for Plaintiff,
                                    BLACKHAWK MANUFACTURING
11                                  GROUP INC.

12

13

14

15   30715869

16

17

18

19

20

21

22

23

24

25

26

27

28